## COWARD *v.* STATE.

(Division A. December 8, 1930.)

[131 So. 257. No. 28798.]

706

**Frank F. Mize,** of Forest, and **Mize, Mize & Thompson,** of Gulfport, for appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

708

**Cook, J.,** delivered the opinion of the court.

The appellant, W. R. Coward, Jr., was convicted in the circuit court of Scott county, Mississippi, of the murder of his brother, Ed. Coward, and was sentenced to the state penitentiary for life, and from this conviction and sentence he prosecuted this appeal.

In order to dispose of the several assignments of error, it will be unnecessary to here set forth the facts surrounding this unfortunate killing. It will be sufficient to say that, according to the testimony of the several eyewitnesses, who testified for the state, the killing was without any sort of excuse or justification, and was clearly murder, while the testimony of the appellant, if believed, makes a clear case of self-defense.

The circuit court of Scott county convened on the 3d day of March, 1930, and on that day the appellant was indicted and arrested. On the same day a subpoena was issued for Clarence Coward, a brother of the appellant and the deceased, and it was returned "not found." On March 6, 1930, the appellant filed a motion for a continuance on account of the absence of this witness. This motion was supported by the affidavit of the appellant, which as to form was in all respects in accordance with the legal requirements. This affidavit averred that the absent witness resided in Scott county, but was temporarily absent from the state; that he was at or near Hammond, Louisiana, and was expected to return to his home within two weeks. It then alleged that the said absent witness was an eyewitness to the difficulty be-

tween the appellant and the deceased, and set forth in detail the facts which the absent witness would testify to if he were present. The facts which it was alleged that this witness would testify to if present were practically identical with those which the appellant afterwards gave in evidence at the trial of the cause, and, if the absent witness would have so testified, his testimony was vital and material to his defense.

Upon the filing of this motion for a continuance, the state offered several witnesses in opposition thereto, and it was shown that the killing occurred about nine days before the convening of the court; that this absent witness attended the funeral of his deceased brother, and left the state on Friday before the convening of the court on the following Monday; that he communicated with his wife from Hammond, Louisiana, and stated he was there hunting for a job of hauling for a team owned by his father and driven by another brother, and that he would be away two or three weeks. The sheriff of the county testified that the absent witness told him that he did not see the shooting, and there was no showing that the appellant saw or communicated with the witness after the killing. The motion for a continuance was overruled, and the cause was set for trial on March 13, 1930. On that date the motion for a continuance on account of the absence of the witness Clarence Coward was renewed, and, in addition to the allegations of the former affidavit in support of the motion, it was alleged that the witness was then near Hammond, Louisiana, and expected to return to his home in Scott county on March 15, 1930. In this motion for a continuance, as an additional ground thereof, it was alleged that Mrs. Willie Hoover, a material witness for the appellant, by whom he expected to prove that the deceased made a violent threat against the appellant's life on the morning before the killing, and who was present at court in response to a subpoena, was

sick and unable to appear in court and testify. It was averred that, if this witness were present and able to testify, she would testify that the deceased made a violent threat against the life of the appellant on the morning before the killing, and that she communicated this threat to the appellant. With the motion for a continuance there was also filed the affidavit of the witness, Mrs. Hoover, setting forth the facts which she would testify to if present. In support of this second, or renewed, motion for a continuance, the appellant offered the testimony of the wife of the absent witness to the effect that, since the hearing of the first motion, she had received a letter from her husband saying that he would try to be back by the 15th of March. She also testified that she wrote her husband that this charge against his brother was set for trial on March 13th, and that he was wanted as a witness in the case. As to the condition of the witness Mrs. Hoover, a physician testified that he had attended her a short while before he was called to the witness stand; that she had fainted, but would probably be able to testify by the afternoon of that day. This motion was overruled, and the appellant assigned as error the action of the court in so doing.

The same threat against the life of the appellant that it was alleged the witness Mrs. Hoover would testify to was proved by the testimony of another witness, and no complaint seems to be here made on account of the absence of this witness, but it is strenuously argued that the court committed reversible error in overruling the motion for a continuance on account of the absence of the witness Clarence Coward.

In the case of Lamar v. State, 63 Miss. 265, the correct course to be pursued by a defendant who applies for a continuance is set forth in detail, and, among other things, it is there laid down as an essential requirement that, when an application for a continuance is first made,

or is renewed when the case is called for trial, and is overruled, "he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination; if, with all his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their ex parte affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and correct any error prejudicial to the defendant which may appear in any part of the proceeding."

In the case at bar, other than the issuance of a subpoena for the witness who was known to be out of the state, and the affidavit of the appellant that he had used due diligence to procure the presence of the witness, there was no showing made as to the diligence used to secure the attendance of the witness, but, if it be conceded that up to the time the case was called for trial, and the renewed application was overruled, the appellant complied with the rules and requirements set forth in the Lamar case, supra, still the appellant thereafter failed to comply with these rules and requirements. There was no motion for a new trial, and, so far as this record shows, no effort whatever was made to secure the presence of the witness, or his ex parte affidavit showing what he would testify to if present, to be presented to the court for examination on a motion for a new trial. While it is true that the witness was shown to be out of the state, at or near Hammond, Louisiana, still it is a matter of common knowledge that Hammond, Louisiana, is within a few hours drive of the courthouse in Scott county, Mississippi, and the fact that the witness was across the state line did not relieve him of the necessity of produc-

ing the affidavit of the witness, or of making some showing as to why it was impractical to do so. With all the means of communication available to the appellant, the duty rested upon him to continue his efforts to secure the attendance of the witness, or his affidavit, to be presented to the court for examination on a motion for a new trial, and, having failed to do so, he cannot assign for error the refusal of the court to grant a continuance on account of the absence of this witness.

The appellant interposed a demurrer to the indictment on the ground that it failed to show that the grand jurors, that returned the indictment, were citizens of Scott county, Mississippi, or were taken from the body of good and lawful men of Scott county, and that the indictment failed to show the jurisdiction of the court. This demurrer was overruled, and the appellant assigns as error the action of the court in so doing, the contention of counsel being that the caption of the indictment does not show that the grand jurors were drawn from Scott county, or that they were elected, summoned, impaneled, sworn, and charged in Scott county. There is no merit in this contention. The caption of the indictment reads as follows: "Circuit court March Term, 1930, state of Mississippi, Scott county: The grand jurors of the state of Mississippi, elected, summoned, empaneled, sworn, and charged to inquire in and for the body of Scott county, state of Mississippi, at the term aforesaid, of the court aforesaid, in the name and by the authority of the state of Mississippi, upon their oaths present," etc.

In the very early case of Byrd v. State, 1 How. 163, the court had under review the caption of an indictment reading, " 'the grand jurors of the state of Mississippi empaneled and sworn in and for the body of' the county of Warren,' etc.," and it was held that this caption showed "with that degree of certainty required in indictments, that they were of the county for which they

are sworn,'' and further that ''this legal certainty, so far, at least, as the prisoner's safety is involved, is strengthened by the presumption that the court could not issue a venire to any other county in the state; and that it could have issued to summon only the householders and freeholders of the county.'' The caption involved in the case at bar is somewhat fuller than the one considered in the Byrd case, supra, and it sufficiently shows the necessary jurisdictional facts.

Upon the issue as to whether or not the appellant was guilty of murder, the state requested, and was granted, six instructions—an unnecessary number, apparently intended to state the same legal propositions in varying shades of language—all of which are vigorously attacked by counsel for the appellant. It would unnecessarily extend this opinion, and probably would serve no useful purpose, to quote herein and discuss these instructions. Some of them, if considered alone, are subject to criticism in the form of expression or language used, but when all the instructions, both for the state and the defendant, are read and considered together, one as modifying and supplementing another, we think the legal principles applicable to the facts were fairly stated, and that there was no reversible error in the instructions granted.

The deceased was standing in the body of a wagon at the time he was shot, and, in the examination in chief of a witness for the state, C. L. Hardy, he testified that the deceased had ''nothing in the wagon but a double-bladed axe lying in the back end.'' The appellant testified that when he fired the fatal shot the deceased was reaching with his left hand for an axe which was leaning against the front end of the wagon. Over the objection of the appellant, the witness Hardy was permitted to repeat, in rebuttal, his statement that the axe was in the back end of the wagon body, and the admission of this testimony in rebuttal is assigned as error. Since the wit-

ness had testified as to the position of the axe in his examination in chief, he should not have been permitted to repeat, in rebuttal, his testimony upon this point, but the repetition of the testimony as to this one fact could not have influenced the verdict, and was therefore harmless error.

For the appellant, one Bruce Rushing testified that he lived about five miles from the home of the deceased, and that on the afternoon before the killing the deceased came to the home of the witness for the purpose of borrowing a pistol, and that he then loaned his pistol to the deceased. In rebuttal, Mitch Coward testified that on the night before the killing he was at a negro church with the deceased, that the deceased had a pistol with him on that occasion, and, over the objection of the appellant, he was permitted to testify that the deceased had the pistol on that occasion for the purpose of "taking a negro who had got in debt to him and run off;" and the appellant assigns as error the admission of this testimony as to the purpose for which the deceased had the pistol on the occasion testified about. The admission of this testimony, if error, was not reversible error.

In our opinion none of the assignments of error are of such merit to warrant a reversal of the judgment of the court below, and therefore the judgment will be affirmed.

Affirmed.