SMITH *v.* STATE.

(In Banc. June 9, 1930.)

[128 So. 891. No. 28381.]

J. N. Yawn, J. A. Naul, and Barlow & Womack, all of Brookhaven, and J. H. Sumrall, of Jackson, for appellants.

W. A. Shipman, Assistant Attorney-General, for the state.

Briefs for counsel not found.

Smith, C. J., delivered the opinion of the court.

The appellant and his wife were jointly indicted for the murder of Tommie Case. No request for severance was made, and they were tried together, resulting in a verdict of conviction of the appellant and the acquittal of his wife. On this verdict against the appellant the death penalty was imposed.

The evidence discloses that the appellant and his wife were driving along a public road in an automobile and met Case and Alteman Watts, who were walking. According to Watts, who testified for the state, when they met, the appellant said "Hey," stopped the automobile and said: " 'Come here Tommie,' and Mr. Case walked up to the car and put one foot on the running board and laid his hands on the door like that and lent over on the door and Henry says, 'Tommie, how many times have you ever had sexual intercourse with Jennie Durr?,' and he says, 'Why, I never done nothing like that with that woman in my life,' and Henry says, 'You are just a G—— d—— lie,' and Hattie, his wife, says, 'Come clean and tell the truth.' She says that twice, told him to come clean and tell the truth about it, and he says, 'Why, Hattie, I have never done anything like that to that woman,' and Henry says, 'You are just a G—— d—— lie, I will shoot the h—— out of you,' and then he reached down in the bottom of the car and got the pistol with the barrel in

his left hand like this and put the butt in his right hand and jerked it up in his face and shot and just before he shot when he jerked the pistol up in his face he jerked his head up like that." According to the testimony of Watts, the appellant then turned to him and said: "Boy, you be d—— sure you don't tell nothing on me or I will get you, G—— d—— you." Case was unarmed, according to Watts' testimony, and made no demonstration whatever against either occupant of the automobile.

The appellant and his wife were arrested shortly after the homicide, and his wife told the officers who made the arrest that she killed Case herself "because he had talked about her." Jennie Durr, referred to in Watt's testimony, is a sister-in-law of the appellant's wife.

At the close of the evidence each of the defendants requested the court to exclude the evidence and to charge the jury to return a verdict of not guilty. Both of these requests were overruled. The appellant and his wife then proceeded with their evidence, and their version of what occurred at the homicide can best be told in the words of the wife, which are: "We overtook Tommie and I told my husband to stop the car, I says 'Stop the car, Henry, I want to see Tommie about them slanderous tales he's been telling about me' and then Henry says . . . Well, I told him to stop the car, that I was going to ask Tommie about them slanderous tales he was telling on me and Henry says, 'Let's go on,' and I says, 'No, I want to ask him about them slanderous tales he's been telling,' and Henry stopped the car there and I called Tommie and he come up pretty close to the car well, about two feet or something like that and says, 'Tommie, what in the name of God have you been telling Otom Smith such slanderous tales on me?' and he says, 'Otom,' and I says, 'Yes,' and he says 'No,' then I says, 'What did you tell Otom that you have been keeping me for,' I says, 'Tommie, you know a bigger lie was never told.' And then I says, 'Tommie, you have got to go with me to Otom and straighten up them lies,' and then he says,

'Straighten up, h——, I'll straighten up my part right now,' and he reached his hand in his bosom like he was after a gun and I thought he was gonna get a gun and . . . I just grabbed mine and shot him right then. He was trying to get his but I just beat him up to it. . . . The pistol was over there by me in the car pocket.''

The appellant and his wife filed a motion to quash the indictment, setting up that, prior to the finding of the indictment, the appellant was indicted and tried for the murder of Case on an indictment against him alone; that the jury reported to the court that they were unable to agree on a verdict, and were discharged; that thereupon the district attorney entered a nol pros over the protest of the appellant, and a few minutes thereafter the grand jury returned into court the indictment on which the trial here was had. This motion was overruled.

At the close of the evidence the court refused a request of the appellant for a directed verdict of not guilty.

A special bill of exceptions was tendered to the trial judge embracing some alleged remarks made by one of the counsel for the prosecution. The judge declined to sign this bill of exceptions, and afterwards some evidence was offered by witnesses, including attorneys at law, as to the truth of the statements contained in the desired bill of exceptions. The trial judge then stated his recollection of what occurred, and why he declined to sign the bill of exceptions.

In a motion for a new trial the appellant alleged that one of the jurors had expressed an opinion that the appellant is guilty, but his voir dire examination did not disclose that he had expressed such an opinion.

The assignments of error are to the effect that the court below erred: (1) In overruling the appellant's request for a directed verdict; (2) in overruling the motion to quash the indictment; (3) in overruling the request at the close of the state's evidence to charge the jury to find the appellant's wife not guilty; (4) in authorizing the jury by the state's instructions to find both the ap-

pellant and his wife guilty; (5) in not sustaining the appellant's objections to the argument of counsel for the prosecution, as set forth in the proposed bill of exceptions; and (6) in refusing to set aside the verdict because of the alleged expression of an opinion as to the appellant's guilt by one of the jurors.

The appellant's request for a directed verdict of not guilty is, of course, manifestly without merit.

The motion to quash the indictment is also wholly without merit, but counsel for the appellant contend that it should be treated as a plea of former jeopardy and sustained as such. Assuming that this can be done, there are two answers to the contention, First, there was no offer of evidence by the appellant, when the case was tried on its merits in support of the allegations of the motion to quash; and, second, under section 22 of the state Constitution "there must be an actual acquittal or conviction on the merits to bar another prosecution."

In support of his contention that the court below erred in overruling a motion made at the close of the state's evidence for a directed verdict in favor of his wife, the appellant says that he was prejudiced thereby, for the reason that he desired to use his wife as a witness in his own behalf. There are three sufficient answers to this contention: First, his wife, according to the evidence for the state, had confessed that she killed Case because of slanderous statements made by him about her; second, the evidence does not disclose that the court was advised when the request for this directed verdict was made that the appellant desired to use his wife as a witness; and, third, no harm resulted to the appellant for the reason that his wife did not decline to, but did, testify, giving evidence which, if true, exonerated the appellant.

No error was committed in submitting the guilt of both the appellant and his wife to the jury. It may be, as to which we express no opinion, that the evidence for the state discloses that either the appellant or his wife is guilty of the murder of Case, but not both. But it was

for the jury to say which one of them was guilty. It the appellant desired to avoid any difficulty presented by this state of the evidence, which is clear from the record he understood would arise, he should have requested a severance before the trial began. Moreover, the error here complained of, if any, was committed against appellant's wife, and not against him, and it is hard to see how he could have been prejudiced thereby.

No attempt has been made to bring the special bill of exceptions within the provisions of the recent amendment contained in House Bill No. 63 to section 796, Code 1906, section 594, Hemingway's Code 1927, so no question thereunder here arises. The bill of exceptions not having been signed by the trial judge, section 794, Code 1906, section 592, Hemingway's Code 1927, or by two attorneys other than those representing the appellant, section 798, Code 1906, section 600, Hemingway's Code 1927, cannot here be considered.

The juror alleged to have expressed an opinion as to the appellant's guilt denied having so done, and the court below was warranted in so believing.

The judgment of the court will be affirmed, and the sentence will be executed on Monday, July 14, 1930.

Affirmed.